IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Criminal No. 03-0203 |
| | ) | |
| EXTREME ASSOCIATES, INC., | ) | |
| ROBERT ZICARI, and JANET | ) | |
| ROMANO | ) | |

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                                          January 15, 2009

This is a criminal prosecution in which the United States has charged defendants with distribution of obscene material via the mails and the Internet. Defendants have filed a motion asking the court to issue a pretrial ruling regarding how the "as a whole" and "community standards" elements of the Miller test will be applied in this case [doc. no. 61].

I.   FACTUAL BACKGROUND

The facts of this case have been recounted in detail by this court, as well as the Court of Appeals for the Third Circuit, in prior opinions. A short review of the facts will suffice for purposes of resolving the pending motion.

Defendants have been charged with ten counts of violating the federal obscenity statutes. In particular, defendants have been charged with mailing three video tapes to an undercover United States postal inspector in Pittsburgh and delivering six digital video clips over the

Internet to that same undercover postal inspector. The inspector ordered the video tapes through Extreme Associates' publicly available website and accessed the video clips after purchasing a monthly membership to the members-only section of Extreme Associates' website.

After an ultimately unsuccessful attempt at obtaining dismissal of the indictment on Constitutional grounds, defendants filed the instant motion, styled as a motion to dismiss, or, alternatively, for a pretrial evidentiary ruling [doc. no. 61]; see U.S. v. Extreme Associates, Inc., et al., 352 F.Supp.2d 578 (W.D. Pa. 2005); U.S. v. Extreme Associates, Inc., et al., 431 F.3d 150 (3d Cir. 2005); U.S. v. Extreme Associates, Inc., et al., 126 S.Ct. 2048 (2006). We denied the motion to dismiss [doc. no. 83]. However, in doing so, we noted the importance of deciding, prior to trial, how the "as a whole" and "community standards" elements of the Miller test would be applied to the charges based on defendants' distribution of the digital video clips. Therefore, we deemed defendants' request for a pretrial ruling on those issues to be a motion in limine and deferred ruling on it until after the court held oral argument on all pending evidentiary motions. The court held such a hearing on December 15, 2008. We now enter the following pretrial ruling.

II.     DISCUSSION

The Supreme Court has established a three part test to be used when determining whether material is legally obscene. Under this test, referred to as "the Miller test", material is obscene if:

1. The average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;
2. The average person, applying contemporary community standards, would find that the work depicts or describes sexual conduct in a patently offensive way; and
3. A reasonable person would find, taking the work as a whole, that it lacks serious literary, artistic, political, or scientific value.

Miller v. California, 413 U.S. 15, 24-25 (1973); see also Pope v. Illinois, 481 U.S. 497, 500-01 (1987); Smith v. United States, 431 U.S. 291, 300-02 (1977); United States v. Orito, 413 U.S. 139, 145 (1973).


A.      As a Whole

Defendants allege that the "as a whole" element of the Miller test as applied to the digital video clip charges should be the "entire Extreme Associates Website," including all web pages to which it is linked [doc. no. 61 at p. 17]. Defendants' only support for this position is a concurring opinion authored by Justice Kennedy in the first case challenging the Child Online Protection Act. Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 593 (2002)

(COPA I). Justice Kennedy's concurrence is not controlling law, nor does it address the exact issue raised in this case.

Instead, we must apply existing obscenity case law regarding the "as a whole" element to these digital video clips. Although this may be unchartered territory, our task is not as difficult as it may appear to be. The "as a whole" element was established in Roth v. United States, in which the Supreme Court rejected the previously accepted proposition that obscenity could be judged on the basis of an isolated, detached, or separate excerpt from a larger work because it was unconstitutionally restrictive of the freedoms of speech and press. Roth v. United States, 354 U.S. 476, 488-89 (1957).

The Supreme Court more recently reiterated the notion that individual scenes cannot be judged in isolation under the "as a whole" test if they are presented in conjunction with, or as part of, a larger work. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 248 (2002) (stating that "[w]here the scene is part of the narrative, the work itself does not for this reason become obscene, even though the scene in isolation might be offensive"). On the other hand, where a person removes passages from other works, and combines them into a new, free-standing compilation, that compilation becomes the new work "as a whole". See e.g., Kahm v. United States, 300 F.2d 78, 83 (5th Cir. 1962).

4

Under these standards, we must view the context and manner in which the material has been created, packaged, and presented by the author to the intended audience in order to decide what the work "as a whole" is for purposes of the Miller test. See e.g., Kois v. Wisconsin, 408 U.S. 229, 231-32 (1972) (allegedly obscene poem must be judged in context of its appearance amid a selection of other, related, non-obscene poems in the interior of a newspaper).

As the government demonstrated at the December 2008 hearing, the digital video clips are presented to the audience as independent videos, complete in and of themselves, and unrelated in content to any other material around them. The charged clips are found on individual fetish web pages within the members-only website. These fetish pages are comprised of numerous individual still pictures, arranged in rows and columns, with a text title below each picture. The text title acts as a link to the digital video clip represented by the still picture appearing above the title. In order to view any particular video clip on the page, the user must click on the title associated with the clip. The clips are related to each other only by general fetish subject matter, and are not presented by defendants as being interconnected to each other, or to any other section of the Extreme Associates website. Nor do defendants indicate to their audience that the clips are part of another, larger work.

As such, regardless of whether the digital video clips are scenes from longer films,[1] given the manner in which the defendants excerpted and posted the clips we find that they are themselves free standing, independent works. Therefore, the work "as a whole" will be each individual digital video clip referenced in the indictment.

B.   Community Standards

Defendants contend that the applicable community for determining community standards for purposes of this case should be "the World Wide Web," or at least the entire United States.[2] Defendants explicitly acknowledged at oral argument that defining the community in this way would be an "expansion" of existing law, but argued that such an expansion was warranted because "times have changed" due to the advent of the Internet. The Court of Appeals for the Third Circuit has already rejected this exact argument in this case. In its opinion reversing our order dismissing the indictment, the Court of Appeals stated that "the

---

[1] An allegation in support of which, we note, defendants have presented no evidence.

[2] Defendants actually argue that this newly created community standard should apply to both the digital video clip charges and the video tape charges because the video tapes, although sent through the mail, were ordered from their website.

[Supreme] Court has not suggested that obscenity law does not apply to the Internet or even that a new analytical path is necessary in Internet cases." U.S. v. Extreme Associates, Inc., et al., 431 F.3d 150, 160-61 (3d Cir. 2005). Under the explicit direction of the Court of Appeals, we decline defendants' invitation to expand existing Supreme Court precedent simply because this case involves the Internet:

> The mere fact, without more, that the instant prosecution involves Internet transmissions is not enough to render an entire line of Supreme Court decisions inapplicable given their analytical and other factual similarities to this case.

Id. at 160.

However, even were we to entertain defendants' arguments in support of creating new law in this case, we would not find them persuasive under the facts of this case. At its core, defendants' argument is that the Internet is different than any other method of delivering sexually explicit materials because material available on the Internet can be viewed from anywhere in the world, without the publisher knowing where the viewer is located. Defendants contend that it is unconstitutional to hold Internet publishers to differing community standards when they have no control over, or knowledge of, from where their material is being viewed. Thus, defendants advocate the creation of a new World Wide Web, or at

7

least national, community standard for any content provided over the Internet. Alternatively, defendants argue that the place of publication should be used to determine the community standard for Internet content providers because that is the only place that the publisher has knowingly conducted business.

The flaw in defendants' argument is that the government has not charged defendants with violating the obscenity statutes by displaying materials on their publically available website. Instead, for the video tape counts, the materials were delivered through the mail to a Pittsburgh address. For the digital video clip counts the material was provided to a user who had previously purchased access to the members-only section of the Extreme Associates website, by, among other things, providing defendants with a credit card and a Pittsburgh address. Thus, in both instances, defendants knew where their audience was located, and the basic premise of their argument fails.

Instead, this case falls within the parameters of existing Supreme Court precedent that has rejected the need to create a national community standard for speakers who choose to send their material into many communities, each with differing community standards. Miller, 413 U.S. at 30-32; Hamling v. United States, 418 U.S. 87, 105-06 (1974); Sable Communications of Cal.,

Inc. v. FCC, 492 U.S. 115, 124-25 (1989); Kaplan v. California, 413 U.S. 115, 119 (1973).

As such, as in those cases, the standards of the community from which the jurors are drawn will be used in this case. Miller, 413 U.S. at 15, 30-34; Hamling, 418 U.S. at 104-06; Sable, 492 U.S. at 125; Pinkus v. United States, 436 U.S. 293, 298, 300 (1978). Therefore, the relevant community for both the video tape charges and the digital video clip charges will be those areas within the jurisdiction of the Pittsburgh Division of the United States District Court for the Western District of Pennsylvania.

III.   CONCLUSION

This opinion shall act as the order of this court.

BY THE COURT:

_____, J.

cc: All Counsel of Record